**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROSEMARY WHELCHEL, Special Administrator** | ) | |
| **of the Estate of ROBERT WHELCHEL,** | ) | |
| **Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 11 C 4595** |
| | ) | |
| **v.** | ) | **Honorable Judge** |
| | ) | **Rebecca Pallmeyer** |
| **BRIGGS & STRATTON CORPORATION,** | ) | |
| **a corporation; BRIGGS & STRATTON POWER** | ) | |
| **PRODUCTS GROUP, LLC, a corporation;** | ) | |
| **FERRIS INDUSTRIES, INC., a corporation; and** | ) | |
| **PEORIA MIDWEST EQUIPMENT, INC., a** | ) | |
| **corporation** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

On August 13, 2009, Robert Whelchel ("Decedent") was killed when the riding lawn mower

he was operating rolled over into a ditch and pinned him beneath it, asphyxiating him. Plaintiff

Rosemary Whelchel, Decedent's wife, filed this action in the Circuit Court of Cook County against

Defendant Peoria Midwest Equipment, Inc. ("Peoria Midwest"), the equipment dealer that sold the

mower to her husband in used condition, and Defendants Briggs & Stratton Corp., Briggs & Stratton

Power Products Group, LLC, and Ferris Industries, Inc. (collectively "Briggs"), the manufacturer of

the mower and its parent entities. Plaintiff brings survivorship and wrongful death causes of action

premised on theories of strict liability and negligence.

Briggs removed the case to federal court, claiming complete diversity between Plaintiff, a

resident of Illinois, and the Briggs Defendants. Although Peoria Midwest is incorporated under the

laws of Illinois and has its principal place of business in Peoria, Illinois, Defendants contend that

Peoria Midwest is fraudulently joined because it is shielded from liability by the Illinois "Distributor

Statute," 735 ILCS 5/2-621, and because Plaintiff has no cause of action for strict liability or negligence against the seller of a used mower. For these reasons, Peoria Midwest moves to dismiss the claims against it. Briggs has also moved to transfer venue to the U.S. District Court for the Central District of Illinois on *forum non conveniens* grounds. Plaintiff moves that the case be remanded to state court. For the reasons stated below, the court concludes that it lacks jurisdiction, and therefore remands this case to state court.

<u>**FACTS**</u>

Plaintiff Whelchel is a resident of Illinois. Defendant Briggs & Stratton Corp. is incorporated under the laws of Wisconsin and has its principal place of business in Wisconsin. (Heath Aff. ¶ 4, Ex. B to Briggs Mem. in Supp. of Removal to the U.S. District Ct. for the N.D. of Ill., Eastern Division (hereinafter "Briggs' Removal Mem.").) Defendant Briggs & Stratton Power Products Group, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Wisconsin; Defendant Briggs has not identified the members of the LLC but has alleged that the LLC is a wholly owned subsidiary of Briggs and Stratton Corp. (*Id.* ¶¶ 3, 5.) Briggs asserts that Defendant Ferris Industries, Inc. is in fact a brand name of Briggs & Stratton Power Products Group. (*Id.* ¶ 6; Briggs Removal Mem. at 2.) The court notes that Ferris' plant appears to be located in New York. (Wildermuth Dep., Ex. 1 to Def. Peoria Midwest's Reply in Supp. of It's [sic] Mot. to Dismiss Counts III, IV, VI and VII of Pl.'s First Am. Compl. at Law (hereinafter "Peoria Midwest's Reply"), at 35, 100-01.) For purposes of this ruling, the court concludes that the Briggs Defendants are diverse in citizenship from Plaintiff. The Briggs Defendants manufacture the Ferris line of mowers, including the Ferris IS1500 Z at issue in this case. (Heath Aff. ¶ 7.)

Defendant Peoria Midwest is incorporated in Illinois (Wildermuth Aff. ¶ 4, Ex. C. to Briggs' Removal Mem.), and has its principal place of business in Peoria, Illinois. (Wildermuth Dep. at 18.) Robert Wildermuth is the co-owner and President of Peoria Midwest. (Wildermuth Aff. ¶ 3; Wildermuth Dep. at 16.) Peoria Midwest "is in the business of selling new and used outdoor power

equipment," including the Ferris line of lawn mowers.  (Wildermuth Aff. ¶ 5.)  Indeed, Peoria Midwest is an authorized dealer of Ferris mowers, meaning that Peoria Midwest sells and supplies parts for that equipment.  (Wildermuth Dep. at 8.)  To maintain that status, on an annual basis Peoria Midwest staff attend service schools and sales and training seminars conducted by Ferris representatives.  (*Id.*)  At these training sessions, Peoria Midwest representatives receive handouts, CDs, videos, and other materials that show the "features and benefits of new equipment."  (*Id.* at 10.)  Additionally, Wildermuth and other Peoria Midwest employees attend an annual power equipment trade show in Louisville, Kentucky, where they meet with Ferris representatives, including Ferris engineers, to "[s]ee what's new on the market [and] talk to [the] manufacturers that [they] deal with."  (*Id.* at 34.)  Wildermuth testified that he has "built up relationships" with people at Ferris over the years, and has in fact visited the Ferris factory in New York on three separate occasions.  (*Id.* at 35.)

On March 11, 2009, Decedent purchased the Ferris ZTR, Model IS1500 Z, KAV2148, Serial No. 199 mower in used condition from Peoria Midwest.  (Pl.'s First Am. Compl. at Law (hereinafter "First Am. Compl."), at Count I ¶¶ 2-3.)  Wildermuth described that model as a "heavy duty homeowner machine" that is also commercial-grade.  (Wildermuth Dep. at 81-82.)  According to an affidavit submitted by a Briggs product safety and compliance engineer, the mower was manufactured in January 2005.  (Butler Aff. ¶ 4, Ex. to Briggs' Reply Brief in Supp. of Peoria Midwest's Mot. to Dismiss Counts II, IV and VI of Pl.'s Am. Compl. and in Opp. to Pl.'s Mot. to Remand (hereinafter "Briggs' Reply").)  Peoria Midwest acquired the mower through a trade-in when another customer purchased a newer model in approximately February 2009.  (Wildermuth Dep. at 45.)  Wildermuth testified that due to a computer failure that destroyed earlier records, Peoria Midwest cannot determine the identity of that earlier customer or whether that customer had

originally purchased the mower from Peoria Midwest. (*Id.* at 47-48.)[1] Before selling the used mower to Decedent, Peoria Midwest performed a "standard service." (*Id.* at 72.) According to Wildermuth, the mower was in good working condition and an inspection revealed no problems. (*Id.* at 46-47, 72.)

Wildermuth admits that he knew the mower did not have a roll bar or a seat belt, which, in other mowers, form what is referred to as a Roll Over Protection Structure ("ROPS"). (*Id.* at 47, 71.) According to Wildermuth, Peoria Midwest did not begin selling Ferris mowers with ROPS as standard equipment until approximately 2009, although he acknowledged that ROPS was an optional feature on some of the Ferris models that Peoria Midwest carried prior to that. (*Id.* at 20-21.) According to Briggs, however, at the time it manufactured the mower in question, the Ferris IS1500 Z did not come equipped with ROPS, nor was ROPS an option. (Butler Aff. ¶ 4.) Consequently, the dealer instruction manual that applies to Decedent's model number makes no mention of roll bar assembly. (Dealer Setup & Adjustment Instructions, Ex. B to Butler Aff.)[2] ROPS did not become an option on Ferris mowers until later in 2005 (Butler Aff. ¶ 7), at which point newer models came with dealer instructions for assembling the roll bar. (Dealer Setup & Adjustment Instructions, Ex. D to First Am. Compl.) From the court's own review, it appears that ROPS are now a standard feature on the Ferris IS1500 Z. *See Specifications*, FERRIS, http://www.ferrisindustries.com/zero-turn-mowers/is1500z/specifications (last visited Feb. 2, 2012) (listing a "Certified Roll-over Protection System" as a standard feature). Wildermuth admitted that

---

[1]     It is unclear from the record whether the absence of these records is attributable to a computer failure, poor record keeping, or a deliberate effort to avoid producing documents. Wildermuth testified that the computer crash occurred in 2007 (*id.* at 42-43), which would not explain why Peoria Midwest has no records for transactions that occurred in 2009. If records existed, the court concludes it is likely they would show that Peoria Midwest was the original seller of the mower because, as Wildermuth himself admitted, Peoria Midwest is the only Ferris dealer in the Peoria area. (*Id.* at 36.)

[2]     New Ferris mowers do not ship to the dealers fully assembled, and therefore require dealer setup and adjustment before sale to the consumer. (Wildermuth Dep. at 26-27.)

material he received from Ferris at the training sessions for authorized dealers discussed the safe operation of Ferris mowers and the benefits of ROPS. (Wildermuth Dep. at 11, 22.) Wildermuth further testified that he will not modify a mower upon a customer's request to remove a roll bar because it puts his company "at too much of a risk." (*Id.* at 88-89.)

Wildermuth personally sold the used Ferris mower without ROPS to Decedent on March 11, 2009. (*Id.* at 67.) Wildermuth sold the used mower "as is," without any warranties. (*Id.* at 105-06.) At the time of sale, Wildermuth took Decedent to Peoria Midwest's parking lot to show Decedent how to operate the mower. (*Id.* at 68-70.) The parking lot is flat except for a slight slope towards the back that did not play a role in Wildermuth's instruction on the mower's operation. (*Id.*) Wildermuth does not know whether he explained to Decedent that the mower had no ROPS or the danger of the mower rolling over. (*Id.* at 74-75.)

On April 13, 2009, Decedent was operating the mower, cutting grass, when the mower "rolled over into a ditch and pinned him beneath it, causing [Decedent] to be held down by the machine and suffer mechanical asphyxiation causing his death." (First Am. Compl. at Count 1 ¶ 4.) Plaintiff, Decedent's wife, brought this survivorship and wrongful death action in the Circuit Court of Cook County on June 13, 2011. In her strict liability claims against all Defendants (Counts I–IV), including Peoria Midwest, Plaintiff alleges that her husband's death was caused by inadequate warnings and instructions concerning the mower's safe use and operation; an insufficient and inadequate braking mechanism; and the lack of ROPS. (*Id.* at Count I ¶ 5, Count II ¶ 4.) Plaintiff's first amended complaint, filed on August 8, 2011 in this court, also brings negligence claims against Peoria Midwest (Counts VI and VII), alleging that Peoria Midwest negligently sold the mower without a sufficient braking system; failed to instruct and/or warn Decedent that ROPS "would prevent injury and death in the event" of a rollover and that the mower was unsafe without ROPS; and failed to equip the mower with ROPS before selling it to Decedent. (*Id.* at Count III ¶ 6.)

Briggs removed the case to federal court, arguing that federal diversity jurisdiction applies

because Peoria Midwest is fraudulently joined. Plaintiff has moved to remand. Also outstanding are Peoria Midwest's motion to dismiss Counts III, IV , VI, and VII,[3] and Briggs' motion to transfer venue on *forum non conveniens* grounds.

**DISCUSSION**

## I.    Legal Standard

A defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have invoked the original jurisdiction of the federal courts**.** 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Where, as here, defendants invoke federal diversity jurisdiction, defendants must demonstrate complete diversity of citizenship and an amount in controversy exceeding $75,000. *Id.* at 758 & n.2; *see also* 28 U.S.C. § 1332(a).

According to the "fraudulent joinder" doctrine, a plaintiff "may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur*, 577 F.3d at 763 (citing *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). A district court considering removal may, therefore, "'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). As the Seventh Circuit has observed,

---

[3]     Peoria Midwest's motion to dismiss mentions only Counts III, IV, and VI, not Count VII, a survival action against Peoria Midwest based on a negligence theory. (Def. Peoria Midwest's Mot. to Dismiss Counts II, IV and VI of Pl.'s First Am. Compl. at Law (hereinafter "Peoria Midwest's Mot. to Dismiss").) The court assumes that the omission of Count VII was inadvertent; in its reply brief, Peoria Midwest addressed Count VII. (Peoria Midwest's Reply Brief at 1, 7.) Plaintiff has not argued that Peoria Midwest's failure to include Count VII in its original motion to dismiss precludes dismissal of that claim.

the term "fraudulent joinder" is a bit of a misnomer—the doctrine requires neither fraud nor joinder. Actual fraud in alleging jurisdictional facts will suffice to invoke the doctrine, but the more typical ground is that a plaintiff brought a claim against a nondiverse defendant "that simply has no chance of success, whatever the plaintiff's motives." And "joinder" is also misleading because it is irrelevant whether a nondiverse defendant was actually "joined" or simply named in the original complaint before the state court.

*Id.* at 736 n.9 (citations omitted) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).

A defendant seeking removal bears "a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause against the in-state defendant." *Poulos*, 959 F.2d at 73. Put another way, "the district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (quoting *Poulos*, 959 F.2d at 73). Furthermore, as the Seventh Circuit noted, many courts "have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* (citing *Mayes*, 198 F.3d at 464; *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006)).

Defendants contend that Plaintiff has no possibility of prevailing against Peoria Midwest, the only nondiverse Defendant, for two reasons. First, Defendants argue that all claims against Peoria Midwest are subject to dismissal under the Illinois "Distributor Statute," 735 ILCS 5/2-621, which mandates the dismissal, subject to certain exceptions, of a distributor from a product liability action once the distributor has submitted an affidavit identifying the manufacturer of the defective product. Second, Defendants contend that Plaintiff has no strict liability or negligence claims under Illinois common law against Peoria Midwest because the mower it sold to Decedent was used. The court addresses these arguments in turn.

## II.     Illinois Distributor Statute

A.     **Strict Liability Claims**

Defendants contend that Plaintiff's claims against Peoria Midwest constitute "fraudulent joinder" because Peoria Midwest is a nonmanufacturer entitled to dismissal from this action under the Illinois "Distributor Statute."  That statute provides that "[i]n any product liability action based in whole or in part on the doctrine of strict liability in tort," *see* Historical and Statutory Notes to 735 ILCS 5/2-621 (providing the pre-amendment language of subsections (a) and (b)),[4] a court must order dismissal of a defendant other than the manufacturer once that defendant "file[s] an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage." 735 ILCS 5/2-621(b).  A court may not order dismissal, however, where a plaintiff shows that the distributor (1) participated in the design or manufacture of the product, (2) had actual knowledge of the defect in the product, or (3) created the defect in the product.  *Id.* § 2-621(c). Additionally, the statute provides that a plaintiff may, at any time, "move to vacate the order of dismissal and reinstate" the distributor if it did not identify the correct manufacturer or if the manufacturer is judgment proof, either because the statute of limitations on the plaintiff's claim has run, the manufacturer is not amenable to service of process, or the manufacturer is unable to satisfy

----

[4]        In 1995, the Illinois Civil Justice Reform Act, Public Act 89-7, amended the statute to extend to claims "based on any theory or doctrine," not merely those claims "based in whole or in part on the doctrine of strict liability in tort." *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 684-85 (N.D. Ill. 2005).  In 1997, however, in *Best v. Taylor Machine Works,* the Illinois Supreme Court struck down the Act as unconstitutional in its entirety.  179 Ill. 2d 367, 467, 689 N.E.2d 1057, 1104 (1997).  The Illinois General Assembly has not subsequently amended the statute.  Thus, as numerous courts, including this court, have recognized, courts "must analyze [a defendant's] argument under the version of the Distributor Statute that existed prior to the 1995 amendment." *Caterpillar*, 393 F. Supp. 2d at 685 (citing *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 822, 754 N.E.2d 429, 438 (5th Dist. 2001)); *see also Willyard v. Wal-Mart Stores, Inc.*, No. 09-cv-295-DRH, 2010 WL 487080, at *1 n.3 (S.D. Ill. Feb. 8, 2010); *Williams v. Am. Equip. & Fabricating Corp.*, No. 09-CV-1168, 2009 WL 5126682, at *1 (C.D. Ill. Dec. 18, 2009); *S. Side Trust And Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 401 Ill. App. 3d 424, 428 n.2, 927 N.E.2d 179, 184 n.2 (1st Dist. 2010); *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 769 n.2, 887 N.E.2d 569, 572 n.2 (1st Dist. 2008).  The court assumes that the Defendants' repeated references to the amended version of the statute are a lapse in legal research rather than an effort to mislead the court.

any judgment or reasonable settlement. *Id.* § 2-621(b)(1)–(5). Although the Distributor Statute falls within the Illinois Code of Civil Procedure, federal courts must apply the rule because, under the test articulated by *Hanna v. Plumer*, its application implicates "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U.S. 460, 468 (1965); *see also Caterpillar*, 393 F. Supp. 2d at 684 (concluding that § 2-621 applies to litigation in federal courts "because its application is outcome-determinative"); *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1046 (S.D. Ill. 2006) (same); *Ungaro v. Rosalco, Inc.*, 948 F. Supp. 783, 785 (N.D. Ill. 1996) (same); *Indeck Power Equip. Co. v. Jefferson Smurfit Corp.*, 881 F. Supp. 338, 341 (N.D. Ill. 1995) (same).

Courts within this circuit are split over whether naming a nondiverse defendant that is entitled to dismissal under the Distributor Statute constitutes "fraudulent joinder" for purposes of federal diversity jurisdiction. The majority of courts take the position that because a court may vacate the dismissal and reinstate a defendant should a manufacturer prove judgment-proof, a dismissal pursuant to the statute is conditional and the nondiverse distributors "remain in effect parties to a products liability action." *LaRoe*, 472 F. Supp. 2d at 1051 (Murphy, J.); *see also Kopitke v. Depuy Orthopaedics, Inc.*, No. 11-cv-912, 2011 WL 856865, at *3 (N.D. Ill. Mar. 8, 2011) (Darrah, J.); *Scheinman v. BMW of N. Am., LLC*, No. 10 C 4848, 2010 WL 3937489, at *3 (N.D. Ill. Sept. 30, 2010) (Conlon, J.); *Cincinnati Ins. Co. v. Prod. Design Prods., Inc.*, No. 06-CV-915 JPG, 2007 WL 1021975, at *7 (S.D. Ill. Apr. 3, 2007) (Gilbert, J.); *Rubino v. Keller Ladders, Inc.*, No. 98 C 262, 2000 WL 220510, at *1 (N.D. Ill. Feb. 18, 2000) (Gettleman, J.). Indeed, as the Illinois Supreme Court has held, an order granting dismissal under the Distributor Statute is not final and appealable because of a plaintiff's ability to reinstate previously dismissed defendants. *See Kellerman v. Crowe*, 119 Ill. 2d 111, 115-16, 518 N.E.2d 116, 118 (1987) ("A dismissal under section 2-621 does not dispose of the rights of the parties. Rather, the statute clearly contemplates the possibility of further action . . . ."). Accordingly, these district courts ordered the cases

remanded to state court because the Illinois distributors destroyed complete diversity, whether or not the Distributor Statute ultimately entitles the Illinios distributors to dismissal.

More recently, however, two courts within this district have rejected the notion that, because the Distributor Statute contemplates the possibility that dismissed claims could later be resurrected, nondiverse distributors subject to dismissal under the statute can never be deemed "fraudulent joinder." In *Steel v. Ford Motor Co.*, the court stressed the Seventh Circuit's "fraudulent joinder" test in *Poulos*, which calls for a prediction "premised on the *current* allegations, not on speculation that 'some facts might turn up.'" No. 11 C 00460, 2011 WL 1485380, at *4 (N.D. Ill. Apr. 19, 2011) (Chang, J.) (quoting *Poulos*, 959 F.2d at 74). The court noted that "[a] possibility need not be premised on much, but a *reasonable* possibility does require some *reason* to believe that [the distributor] will re-appear in the case." *Id.* The court further noted that under the conditional-dismissal view, "no case involving a § 2-621 dismissal would be removable, no matter the remoteness of the possibility of recovery against the non-diverse Illinois distributor." *Id.* at *5. Because the plaintiff in *Steel* did not allege that the Illinois distributor was covered by any of the § 2-621(c) grounds, and the manufacturer-defendant, Ford Motor Company, was far from judgment-proof, the court concluded that the possibility of recovery against the Illinois distributor was too slim to justify treating the Illinois distributor as a properly-named nondiverse defendant for purposes of a motion to remand. *Id.* at *4-5. Citing *Steel*, another court within this district concluded that "it is impossible to square *Poulos'* 'reasonable possibility' test with a categorical bar on treating defendants dismissed pursuant to § 2-261 as fraudulently joined. There is no reason why a district court cannot engage in the same 'act of prediction' in cases involving § 2-621 dismissals as it does with every other type of involuntary dismissal." *Xiaofa Shi v. Am. Honda Motor Co., Inc.*, No. 11 C 2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011) (Zagel, J.).

This court agrees with Judge Chang's and Judge Zagel's well reasoned opinions. To allow the conditional nature of a § 2-621 dismissal to defeat diversity jurisdiction in all cases where a

distributor is nondiverse would change the *Poulos* "reasonable possibility" test into an "any possibility" test. The question, therefore, is whether there is a "reasonable possibility" that Plaintiff can establish one of the § 2-621(c) factors and, if not, whether there is a "reasonable possibility" that the Plaintiff will be unable to recover from the manufacturer for one of the reasons stated in § 2-621(b). The possibility that Plaintiff will be unable to recover from the manufacturers is too slim by itself to justify treating Peoria Midwest as a properly joined party; Briggs' total assets exceeded $1.5 billion in 2010 (Consolidated Balance Sheets, Ex. A to Heath Aff.), and Briggs holds an insurance policy that provides $25 million in coverage. (Heath Aff. ¶ 10.) Thus, whether Peoria Midwest should be dismissed, and the remand motion denied, depends on whether Defendants can carry their heavy burden of demonstrating that there is no reasonable possibility that Plaintiff can establish one of the § 2-621(c) grounds—either that Peoria Midwest participated in the design of manufacture of the mower, had actual knowledge of the defect, or created the defect.

Plaintiff contends, first, that Peoria Midwest falls within § 2-621(c)(3) because it failed to follow the Dealer Setup and Adjustment Instructions, which call for the installation of a roll bar. Plaintiff cites to a dealer manual, with a copyright date of 2005, which includes instructions for roll bar assembly. (Dealer Setup & Adjustment Instructions, Ex. D to First Am. Compl.) But according to an affidavit submitted by Briggs' Product Safety & Compliance Engineer, Marvin W. Butler, rollover protection for the Ferris IS1500 Z did not become available until later in the year in 2005, and the manual provided by Plaintiff applies to those later models. (Butler Aff. ¶ 7.) A dealer manual dated December 2004, which Bulter attests is the manual that applied to the model purchased by Decedent, does not include instructions for roll bar installation. (Dealer Setup & Adjustment Instructions, Ex. B. to Butler Aff.) Plaintiff cannot show that Peoria Midwest failed to follow manufacturer instructions for roll bar assembly if, as it appears here, the particular model purchased by Decedent was not designed by the manufacturer to include a roll bar. Thus, the court concludes that, even resolving all facts in favor of the Plaintiff, Plaintiff is unlikely to show that

Peoria Midwest created the defect that caused Decedent's death.

Plaintiff's second § 2-621(c) argument is that Peoria Midwest had actual knowledge of the defect that caused death—specifically, the absence of a roll bar and safety belt. In this respect, Plaintiff's claim is similar to that in *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 887 N.E.2d 569 (1st Dist. 2008), in which the First District Appellate Court addressed the "actual knowledge" standard under § 2-621(c)(2). In *Murphy*, the plaintiff, who sustained permanent spinal cord injury when his Chrysler Sebring convertible rolled over, brought a strict liability claim against both the manufacturer and the car dealer. The plaintiff alleged that the design of the Sebring caused his injury because the windshield and roof of the convertible were designed with inadequate strength, and the convertible was not equipped with a sufficient roll bar or other devices to prevent injury in the event of a rollover. *Id.* 381 Ill. App. 3d at 771, 887 N.E.2d at 573. The dealership moved to dismiss the claims against it pursuant to the Distributor Statute, but the plaintiff responded that the dealer had actual knowledge of the defects. Citing a deposition of the dealership's general manager, the plaintiff asserted that the dealership had actual knowledge of the allegedly defective conditions, but the plaintiff did not specifically allege that the dealership knew that those physical conditions made the vehicle unreasonably dangerous. *Id.* 381 Ill. App. 3d at 772, 887 N.E.2d at 574. The court addressed the following question, which had been certified by the Circuit Court:

> [W]hether a plaintiff asserting the section 2-621(c)(2) exception to avert dismissal of a nonmanufacturer defendant must 'allege only that said defendant had actual knowledge of the physical characteristics of the product that plaintiff claims were unreasonably dangerous, or in the alternative, must plaintiff allege actual knowledge of the physical characteristics of the product *and* actual knowledge that said characteristics made the product unreasonably dangerous?

*Id.* In assessing that question, the *Murphy* court noted that § 2-621(c) introduced fault elements, usually associated with negligence actions, into a strict liability action in which fault ordinarily has no place. *Id.* 381 Ill. App. 3d at 773-74, 887 N.E.2d at 575. Because the statute is in derogation of the common law of strict product liability, the court limited the statute to its express language.

*Id.* (citing *Adams v. N. Ill. Gas Co.*, 211 Ill. 2d 32, 69, 809 N.E.2d 1248, 1272 (2004)). Examining the language requiring "actual knowledge of the *defect,*" the court interpreted the statute to require "actual knowledge of the imperfection/blemish/fault/deficiency in the product which caused the injury." *Id.* 381 Ill. App. 3d at 775, 887 N.E.2d at 576. In the context of strict liability, the court reasoned, this meant that in order to be held liable under this provision, the defendant had to have knowledge of the "unreasonably dangerous nature of the physical characteristics/design of the product." *Id.* The court concluded that the legislature did not "eliminate strict liability for nonmanufacturer defendants," but rather

> limit[ed] the application of common law strict liability to those defendants who may actually be at fault for injuries sustained by a defective/unreasonable dangerous product and should, therefore, be the ones to pay for those injures: (1) manufacturers and (2) nonmanufacturer defendants who may have actively contributed in some way to the injury, whether through control, failure to warn, disregard of known dangers or wilful and wanton misconduct.

*Id.* 381 Ill. App. 3d at 775, 887 N.E.2d at 576-77.[5]

In this case, Plaintiff alleges that Peoria Midwest had actual knowledge that the mower it sold to Decedent lacked a roll bar and seat belt. Plaintiff cites the deposition of Peoria Midwest's President and co-owner, Robert Wildermuth, in which Wildermuth testified that the mower was not equipped with ROPS. As the *Murphy* court made clear, knowledge of the physical condition is insufficient by itself to satisfy § 2-621(c)(2); Plaintiff must in addition show that Peoria Midwest knew that the absence of a ROPS on the mower constituted an unreasonably dangerous condition. But it appears that this is a showing that Plaintiff can make at this stage. Later in 2005, Briggs began to manufacturer the Ferris IS1500Z with a roll bar. Peoria Midwest, as an authorized dealer of new

---

[5] The *Murphy* court remanded the case to the Circuit Court for consideration of whether the plaintiff could demonstrate fault on the part of the dealership under this test. *Id.* 381 Ill. App. 3d at 776, 887 N.E.2d at 577. It appears that on remand, the circuit court concluded that the plaintiff failed to meet his burden. *See Murphy v. Mancari's Chrysler Plymouth, Inc.*, 408 Ill. App. 3d 722, 723, 948 N.E.2d 233, 235 (1st Dist. 2011) (noting in the resolution of a subsequent certified question on a choice-of-law issue that "[t]he case went forward solely on the strict liability claim against Chrysler and the negligence claim against [the dealership]").

and used Ferris mowers, would have been aware of this safety improvement when it sold Decedent the older model in 2009. Indeed, Wildermuth began selling equipment with ROPS in approximately 2008, and Ferris machines with ROPS in 2009, although some Ferris machines had ROPS as optional equipment before that. As an authorized Ferris dealer, Peoria Midwest was furnished with Ferris training materials that commented on the benefits of ROPS, and Ferris representatives addressed ROPS at training sessions. Furthermore, Wildermuth acknowledged that he would not modify a mower by removing a roll bar because of the risk of suit. From that statement, drawing inferences in favor of Plaintiff, the court infers that Wildermuth was aware of the dangers of this type of mower without a ROPS. The court concludes that Plaintiff has demonstrated a reasonable possibility that she can satisfy § 2-621(c)(2) by showing that Peoria Midwest had actual knowledge of the unreasonably dangerous nature of this type of mower without ROPS.

### B.    Negligence Claims

Even if Peoria Midwest is entitled to dismissal of the strict liability claims under the Distributor Statute, Peoria Midwest may be properly named in Plaintiff's claims of negligence. Defendants contend that the Distributor Statute requires dismissal of Plaintiff's claims against Peoria Midwest, as a nonmanufacturer defendant, "based on any theory or doctrine." (Briggs' Removal Mem. at 3; Def. Peoria Midwest's Mem. of Law in Supp. of Its Mot. to Dismiss at 3; Briggs' Mem. in Supp. of Peoria Midwest's Mot. to Dismiss at 3; Peoria Midwest's Reply at 2; Biggs' Reply at 6.) As the court explained above, however, the Illinois Supreme Court in *Best* held unconstitutional *in toto* the act that amended § 2-621(a) by adding this language. *See supra* note 4. Thus, courts must apply the law as it existed before the amendment, when the Distributor Statute applied to "any product liability action based in whole or in part on the doctrine of strict liability in tort." *See* cases cited *supra* note 4.

As this court noted in *Caterpillar, Inc. v. Usinor Industeel*, at least two district courts have held that the Distributor Statute applies to negligence claims as well as strict liability claims. 393

F. Supp. 2d at 685 (citing *Inman v. Daimler-Chrysler Corp.*, No. 00 C 0134, 2000 WL 283016 (N.D. Ill. Mar. 9, 2000); *Ungaro*, 948 F. Supp. 783). The earlier of these cases, however, predated *Best* by a year, and therefore applied the amended version of the law before the Illinois Supreme Court struck it down, holding that the statute barred claims "based on any theory or doctrine." *See Ungaro*, 948 F. Supp. at 786 ("This amendment clearly indicates the intent of the legislature to extend the coverage of the statute beyond strict liability actions."). Although the later case postdates *Best*, the court there nevertheless applied the amended version of the statute without acknowledging *Best*, relying on the conclusions of the *Ungaro* court. *Inman*, 2000 WL 283016, at *5; *cf. Int'l Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.*, Nos. 97 C 8113, 97 C 8114, 1998 WL 242130, at *4 (N.D. Ill. May 8, 1998) (acknowledging *Best*, but dismissing on the merits without reaching the question of which verison of § 2-621 applied). In light of *Best*, these "cases are of questionable precedential value." *Caterpillar*, 393 F. Supp. 2d at 686.

Negligence claims do not fall within the scope of the pre-amendment language—claims "based in whole or in part on the doctrine of strict liability in tort." Numerous courts to address the issue under the pre-amendment language have declined to dismiss negligence claims pursuant to the Distributor Statute. *See Williams*, 2009 WL 5126682 at * 3; *Rosenthal v. Werner Co.*, No. 06 C 2873, 2009 WL 995489, at *5 (N.D. Ill. Apr. 13, 2009); *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1066 (S.D. Ill. 2006); *LaRoe*, 472 F. Supp. 2d at 1047; *Potter v. Electrolux Home Prods., Inc.*, No. 06 C 4811, 2006 WL 2930972, at *2 (N.D. Ill. Oct. 11, 2006); *Ison v. Invacare Corp.*, No. 02 C 50296, 2004 WL 539982, at *1 (N.D. Ill. Mar. 12, 2004); *Aron v. Brown & Williamson Tobacco Corp.*, No. 02 C 3512, 2003 WL 21305531, at *2 (N.D. Ill. Feb. 10, 2003); *Korologos v. Radium Chem. Co.*, No. 83 C 4235, 1986 WL 7700, at *3 (N.D. Ill. June 27, 1986); *Link ex rel. Link v. Venture Stores, Inc.*, 286 Ill. App. 3d 977, 978, 677 N.E.2d 486, 487 (5th Dist. 1997). This court concludes Plaintiff's negligence claims are not properly subject to dismissal under the Distributor Statute.

Defendants have not carried their burden of establishing that Peoria Midwest is fraudulently joined based solely on the Distributor Statute.

## III.    Illinois Common Law Claims Against Re-sellers

Even if Plaintiff's common law claims against Peoria Midwest are not statutorily barred, Defendants argue, the court should recognize that Plaintiff has no reasonable possibility of prevailing on those claims.  Defendants contend that because Peoria Midwest sold Decedent a used mower, Peoria Midwest has no liability under either strict liability or negligence theories.  The court discusses these theories in turn below.

### A.    Strict Liability for Re-sellers

The Illinois Supreme Court first addressed the issue of whether strict liability extends to sellers of used products in *Peterson v. Lou Bachrodt Chevrolet Co.*, 61 Ill. 2d 17, 329 N.E.2d 785 (1975).  There, the father of two children struck by a used Chevrolet brought suit against the dealership that sold the car to the driver, alleging that at the time the car left the dealership's possession, the car was defective due to missing springs in the brake system, worn out brake shoes, and a missing cylinder braking system on the left rear wheel.  *Id.* 61 Ill. 2d at 19, 329 N.E.2d at 786.[6]  The court noted that defendants within "the original producing and marketing chain" are "liable under a theory of strict liability if the plaintiffs 'prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control.'" *Id.* 61 Ill. 2d at 20, 329 N.E.2d at 786 (quoting *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188 (1965), *overruled on other grounds by Dixon v. Chicago & N.W. Transp. Co.*, 151 Ill. 2d 108, 123, 601 N.E.2d 704, 711 (1992)).  The court explained that strict liability applies to retailers because "their position in the

---

[6]    Although the parties in *Peterson* disagreed about whether pedestrians injured by defective and unreasonably dangerous automobile could bring a products liability suit on a strict liability theory, the court decided that it did not need to reach that issue because of its disposition on the question of a used-car dealer's liability.  *Id.*

marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product." *Id.* 61 Ill. 2d at 20, 329 N.E.2d at 787. The *Peterson* court concluded, however, that strict liability did not apply to the re-seller in question because plaintiff did not allege either "that the defects existed when the product left the control of the manufacturer" or "that the defects were created by the used car dealer." *Id.* 61 Ill. 2d at 21, 329 N.E.2d at 787. If the court imposed strict liability where these circumstances were not met, the court reasoned, "the used car dealer would in effect become an insurer against defects which had come into existence after the chain of distribution was complete, and while the product was under the control of one or more consumers." *Id.*

The Illinois Supreme Court returned to the issue of used-car dealer liability in *Court v. Grzelinski*, 72 Ill. 2d 141, 379 N.E.2d 281 (1978). In *Court*, a firefighter brought a strict liability cause of action against the dealership that had sold a used car that erupted in flames, injuring the firefighter battling the blaze when the car exploded. *Id.* 72 Ill. 2d at 144, 379 N.E.2d at 282. The court noted that in *Peterson*, "the plaintiff had failed to allege *either* that the defects existed when the product left the control of the manufacturer *or* that the defects were created by the used car dealer." *Id.* 72 Ill. 2d at 145, 379 N.E.2d at 282 (emphasis added). The firefighter in *Court*, in contrast, had satisfied both *Peterson* exceptions for extending strict liability to re-sellers: the complaint alleged "that the gasoline tank was defectively designed by the manufacturer, thereby creating a 'high degree of risk that (it) would explode,' and that the tank was defectively assembled, installed and positioned by [the dealership] in that no adequate devices were used which would prevent the tank from exploding." *Id.* 72 Ill. 2d at 145-46, 379 N.E.2d at 282. Accordingly, the Illinois Supreme Court agreed that the firefighter's strict liability claims could proceed. Notably, while the court concluded that both the *Peterson* exceptions were satisfied in *Court*, the "either . . . or" construction suggests that a plaintiff need establish only one.

Defendants rely heavily on *Cruz v. Midland-Ross Corp.*, 813 F. Supp. 628 (N.D. Ill. 1993),[7] to support their contention that Peoria Midwest is not strictly liable for defects in the used mower sold to Decedent. In *Cruz*, the federal district court interpreted *Peterson* as precluing liability for re-sellers because, as parties that falls outside "the original producing and marketing chain," such sellers "are not in a position to pressure manufacturers into building safer products." *Id.* at 630. At least one other court in this circuit has expressed support for *Cruz*'s blanket preclusion of liability. *See Zavala-Pizano v. Indus. Handling Equip. Co.*, 847 F. Supp. 621, 623 (C.D. Ill. 1994) ("[T]he Court agrees with Judge Grady's well reasoned opinion in *Cruz* . . . that policy and cost/benefit considerations should preclude *any* duty on dealers of used equipment."). The *Cruz* court, however, did not mention the two exceptions, identified by *Peterson* and reaffirmed in *Court*, in which a used-car dealer *could* be strictly liable—where the defect originated with the manufacturer or was caused by the re-seller. Indeed, the *Cruz* court did not mention or cite the Illinois Supreme Court's subsequent decision in *Court*, which allowed a plaintiff to bring a strict-liability claim against a used-car dealer where the two *Peterson* exceptions were met. Accordingly, to the extent that *Cruz* endorses a blanket preclusion of strict liability for re-sellers, this court respectfully concludes it is not consistent with the law as set forth by Illinois' highest court.

This court reads the *Peterson* court's concern to be the imposition of liability on re-sellers for defects caused by intervening consumers outside the chain of distribution. But where, as here, a plaintiff alleges design defects originating with the manufacturer, claims against the re-seller fall within the first *Peterson* exception—that the defect existed when the product left the control of the manufacturer. To be sure, a retailer who sells used products exclusively, and has no trade

---

[7]    In *Cruz*, the plaintiff brought suit against a company in the business of buying and selling used industrial equipment when the door of an industrial furnace sold by the company to the plaintiff's employer fell on the plaintiff's arm, resulting in complete amputation. *Id.* at 629. Plaintiff brought a negligence claim, alleging that the company "negligently failed to test, inspect, refurbish, repair, and warn of dangers with respect to the furnace." *Id.* at 629. Plaintiffs did not sue in strict products liability because the time for bringing that claim had run. *Id.* at 629 n.1.

relationship with the manufacturers of its products, appears not to implicate the policy rationale for holding retailers liable for defects attributable to the manufacturer. But those are not the circumstances presented here. Peoria Midwest sells both new and used mowers. Moreover, Peoria Midwest is an authorized dealer of Ferris mowers and maintains this distinction by attending training sessions sponsored by the manufacturer. Additionally, Wildermuth and his employees annually attend a trade show in Louisville where they have the opportunity to meet with Ferris engineers, and Wildermuth has visited the Ferris plant in New York on three separate occasions. That the particular mower in this case happens to be a used one does not call into question whether Peoria Midwest's significant trade relationship with Ferris puts Peoria Midwest in the position to pressure Ferris to improve the safety of its mowers.

The court concludes that to the extent Plaintiff's strict liability claims are not subject to dismissal under the Distributor Statute, Plaintiff has a reasonable possibility of succeeding on those claims.

## B.    Negligence

Defendants contend that Illinois law precludes re-seller liability under both strict liability and negligence theories. Once again, Defendants rely on *Cruz*, which concluded that "[t]hough the rule in *Peterson* dealt with strict liability in tort, it has since been expanded to include products liability claims sounding in negligence." *Cruz*, 813 F. Supp. at 630. (citing *Rahn v. Gerdts*, 119 Ill. App. 3d 781, 455 N.E.2d 807 (3d Dist. 1983)). In the case cited by *Cruz*, the Illinois Appellate Court affirmed the dismissal of a negligence claim brought against a re-seller of a mobile home that burst into flames when a fuel tank became disconnected. *Rahn*, 119 Ill. App. 3d at 783, 455 N.E.2d at 808. The *Rahn* court read language in *Peterson* as "tend[ing] to negate any duty [upon re-sellers] to generally inspect and discover defects." *Id.* 119 Ill. App. 3d at 787, 445 N.E. 2d at 810-11. That reading of *Peterson* appears inconsistent with the case's subsequent history, however. After the Illinois Supreme Court, in *Peterson*, affirmed dismissal of strict liability claims against the used-car

dealer, the plaintiff returned to the circuit court, where "[t]he action proceeded to trial on a negligence theory, a jury returned a verdict in favor of defendant and against plaintiff, and the court entered judgment thereon." *Peterson v. Lou Bachrodt Chevrolet Co.*, 76 Ill. 2d 353, 356, 392 N.E.2d 1, 2 (1979), *overruled on other grounds by Wills v. Foster*, 229 Ill. 2d 393, 415, 892 N.E.2d 1018, 1031 (2008). The plaintiff appealed the verdict and the case ultimately reached the Illinois Supreme Court for a second time, where the Court ordered a retrial due to evidentiary errors at the first trial. *See id.* 76 Ill. 2d at 359-60, 392 N.E.2d at 3-4 (concluding that testimony by a reconstruction witness on the car's speed that contradicted eye-witness testimony was inadmissible and not a harmless error). If the Illinois Supreme Court intended for its first *Peterson* decision to relieve re-sellers of liability altogether, as the *Rahn* court suggested, then presumably the Illinois Supreme Court would not have remanded a negligence claim brought against the re-seller for retrial.

Defendants also contend that Plaintiff's negligence claim against Peoria Midwest must fail because the re-seller had no duty to warn the Decedent of defects that were "known and obvious."[8] Specifically, the Defendants claim that it was immediately apparent that the mower lacked a roll bar and seat belt. Under Illinois law, a re-seller has "a duty to warn of a dangerous condition which it knows or if it had unequal knowledge and reason to believe that [the buyer] would not perceive of the danger." *Zavala-Pizano*, 847 F. Supp. at 622 (citing *Kirkman v. Kirkman*, 195 Ill. App. 3d 393, 397, 552 N.E.2d 282, 284 (4th Dist. 1990)). But there is no duty upon sellers of used goods "to warn against risks which are known and obvious." *Id.* (citing *Kirkman*, 195 Ill. App. 3d at 398, 552 N.E.2d at 284). In *Zavala-Pizano*, cited by Defendants, the plaintiff brought a complaint against a

---

[8]     Defendants direct this argument against Plaintiff's negligence claim based on a failure-to-warn theory. Plaintiff also alleges that Peoria Midwest negligently sold a mower without a braking system sufficient to control it during foreseeable use and that Peoria Midwest acted negligently by failing to install a ROPS prior to sale to the Decedent. Because the court concludes that Plaintiff has a reasonable possiblity of success on the failure-to-warn claim, the court need not address Plaintiff's other negligence claims.

buyer who had resold a used conveyer belt to the plaintiff's employer after the plaintiff's glove became caught in the conveyer, resulting in partial amputation of plaintiff's right arm. *Id.* at 622. The buyer, in turn, brought a third party complaint against the company that had sold it the conveyer as used equipment. *Id.* Addressing the third party complaint, the federal district court concluded that the alleged defects—absence of safety guards that could have prevented the plaintiff's injury—were known and obvious to the buyer, "a professional conveyor dealer and seller" whose president "acknowledged that he knew that there were no such guards, and that he consciously and knowingly resold the conveyor equipment, after modifying it, to the plaintiff's employer without the . . . guards because he did not believe the guards were necessary." *Id.* On these facts, the court concluded that there was no asymmetry of knowledge between the buyer and the seller and therefore no duty to warn.

In this case, in contrast, the record does not reveal the Decedent's level of knowledge about mowers, but it is reasonable to infer that he was not as sophisticated a buyer as the buyer in *Zavala-Pizano*, who specialized in buying and selling industrial conveyers and possessed as much, if not more, knowledge than the seller. Decedent in this case almost certainly had more limited knowledge than Peoria Midwest, an authorized dealer of Ferris mowers. Although a person aware of ROPS on mowers would recognize the absence of a roll bar and the attendant dangers of rollover, the court cannot conclude from the allegations in the complaint that Decedent would have recognized the roll bar's absence or would have known to be concerned by it. Defendants have failed to carry their burden of demonstrating that Plaintiff does not have a reasonable possibility of success on her negligence claim for Peoria Midwest's failure to warn.

## CONCLUSION

The court concludes that Defendant Peoria Midwest is not fraudulently joined. Plaintiff's negligence claims are not subject to dismissal under the Illinois Distributor Statute, and Plaintiff has a reasonable possibility of satisfying the "actual knowledge" exception to the dismissal of her strict

liability claims.  Furthermore, even though Peoria Midwest sold a used mower to Decedent, Plaintiff has a reasonable possibility of success on both strict liability and negligence claims.  Because Peoria Midwest is a nondiverse party, this court lacks federal diversity jurisdiction and must remand the case to state court.  Plaintiff's motion to remand [21] is granted; Defendant Briggs' motion to transfer venue [7] and Defendant Peoria Midwest's motion to dismiss [31] are denied as moot, without prejudice.

                                ENTER:


Dated: February 7, 2012
                                _____
                                REBECCA R. PALLMEYER
                                United States District Judge